## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES S.[1]**, | Case No. 6:19-cv-1004-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller, Brent Wells, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette Street, Eugene, Oregon 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Erin F. Highland, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff James S. (Plaintiff) brings this action pursuant to § 205(g) of the Social Security

Act (the Act), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Act. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

On May 1, 2015, Plaintiff protectively filed an application for Disability Insurance

Benefits (DIB). AR 41. Plaintiff also protectively filed an application for SSI on October 30,

2015. *Id.* In both applications for benefits, Plaintiff alleged disability beginning February 28,

2015. *Id.* Born in 1978, Plaintiff was thirty-seven years old on the application date. AR 53. The

agency denied the claims both initially and upon reconsideration, and Plaintiff requested a

hearing. AR 41. He appeared in February 2018 for a hearing before ALJ Steven De Monbreum,

which was postponed so Plaintiff could submit additional medical records, and held in

June 2018. AR 41. At the hearing, Plaintiff amended his alleged onset date to October 12, 2015,

which was after his date last insured and thus Plaintiff voluntarily withdrew his request for a

hearing with respect to his DIB benefits. AR 41.

On July 5, 2018, the ALJ issued his decision. AR 41-54. Based on Plaintiff's voluntary

withdrawal of his DIB claim, the ALJ dismissed that claim. AR 41. The ALJ analyzed Plaintiff's

SSI claim, and denied that claim on the merits. AR 54. Plaintiff requested review of that

decision, which the Appeals Council denied, making the ALJ's decision the final decision of the

Commissioner. AR 1. Plaintiff seeks judicial review of the ALJ's decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after October 30, 2015, the application date. AR. 44. At step two, the ALJ found that Plaintiff had the following severe, medically determinable impairment: "degenerative disc disease status post surgeries." AR 44. At step three, the ALJ found no impairment that met or equaled the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 46. Next, the ALJ assessed that Plaintiff had the RFC to

> perform sedentary work as defined in 20 CFR 416.967(a) except
> no pushing and pulling with the bilateral lower extremities, such as
> in the operation of foot controls; occasionally climb ramps or
> stairs, never climb ladders, ropes, or scaffolds; never crawl, and
> occasionally balance, kneel, crouch, stoop, and bend. The claimant
> can tolerate no exposure to vibration or hazards such as dangerous
> machinery and unprotected heights.

AR 46.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work.

AR 53. At step five, the ALJ found that Plaintiff retained the ability to perform the requirements

of jobs existing in significant numbers in the national economy, including stuffer, polisher of

eyeglass frames, and electronic film touch-up inspector. AR 53-54. The ALJ concluded that

Plaintiff was not disabled under the meaning of the Act. AR 54.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (a) failing to identify specific, clear, convincing

reasons to reject Plaintiff's subjective symptom testimony; (b) improperly discrediting the

opinions of Peter Kosek, M.D., and Rebecca McBride, N.P.; and (c) improperly rejecting the lay

witness testimony of Plaintiff's spouse. Each argument is addressed in turn.

**A.  Plaintiff's Subjective Symptom Testimony**

The ALJ rejected Plaintiff's testimony regarding the intensity, persistence, and limiting

effects of his symptoms because the ALJ found that they were inconsistent with Plaintiff's

treatment record, objective medical evidence, and activities of daily living. AR 47, 51.

Plaintiff testified that he experiences the following symptoms:

- Inability to sit or stand "very long at once"

- Inability to lift ten pounds without "excruciating pain"

- Extreme pain with turning or bending

- Inability to walk, at times, as a result of numbness in his legs

- Sharp pain in his legs and feet that wake him up at night

- Inability to work due to radiating back pain that worsened after two spinal surgeries

AR 47.

The ALJ highlighted a number of facts in the medical record that were, in the ALJ's view, inconsistent with this testimony. These facts include Plaintiff's lack of treatment from July 2016 to September 2017, Plaintiff's lack of prescription analgesic medication and reliance on self-medication and treatment for pain management during that time, the pain relief Plaintiff experienced from the spinal cord stimulator trial, and Plaintiff's pursuit of an implanted spinal cord stimulator. AR 47, 49. The ALJ also discussed Plaintiff's activities of daily living (ADLs) and found that they did not support Plaintiff's alleged limitations and were consistent with the ability to carry out sedentary work within the limitations of the RFC. AR 51.

Plaintiff objects to the ALJ's reasoning for rejecting his subjective symptom testimony. Plaintiff argues that: 1) he did not experience improvement following his two back surgeries, but rather suffers from post-laminectomy syndrome and is no longer a candidate for surgery due to his two failed surgeries; 2) the ALJ has not shown that Plaintiff had access to treatment options during the fourteen month gap in treatment; 3) treatment records from September and November 2017 show a worsening in his condition; and 4) his ADLs are not inconsistent with his symptom testimony or the equivalent of eight-hour work.

### 1. Legal Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *6 (Oct. 25

2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2.  Failure to Seek Treatment

The ALJ found that Plaintiff's failure to seek treatment for about 14 months from July 2016 to September 2017, and lack of prescription medication or other medical pain

management during that time, undermines the intensity of his symptom testimony. When
Plaintiff did return to treatment in late 2017, MRI imaging showed only slight progression from
imaging in 2015.

Reliance on inconsistency between symptoms alleged and treatment sought is permissible
when evaluating the weight given to subjective symptom testimony. SSR 16-3P states that "if the
frequency or extent of the treatment sought by an individual is not comparable with the degree of
the individual's subjective complaints, or if the individual fails to follow prescribed treatment
that might improve symptoms, we may find the alleged intensity and persistence of an
individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p at *9.

Plaintiff argues that his gap in treatment was because he lacked financial resources for
care and when he returned to treatment his condition had worsened, and therefore this gap does
not undermine his symptom testimony. During the hearing, Plaintiff explained that he stopped
seeing Dr. Miller, the provider he saw in July 2016, because he "owed their physical therapy
place some money" (late fees assessed for missing a number of physical therapy appointments)
and they stopped taking the Oregon Health Plan. AR 73-74, 85. Plaintiff does not describe efforts
to find an alternate provider who accepted the Oregon Health Plan in his testimony or his brief.
Plaintiff explained that he let his Oregon Health Plan lapse when he failed to complete his
renewal. AR 87. The ALJ asked Plaintiff why someone with the symptoms Plaintiff describes
would let their health insurance lapse, and Plaintiff says he decided not to seek care because his
prior treatments had been unsuccessful and he did not want to get "screwed up even worse".
AR 87-88.

Plaintiff argues that the ALJ has not shown that Plaintiff could have found affordable
treatment, and that because there is no evidence showing that low- or no-cost care "was available

to him" the ALJ cannot reject his argument that he lacked financial resources. Yet Plaintiff has

not presented any evidence showing that he sought but was unable to find affordable care.

Plaintiff also does not present any affirmative evidence that he became ineligible for the Oregon

Health Plan during the gap in treatment for any reason except his own failure to renew, that he

suffered any change in financial condition, or anything contradicting his hearing testimony that

his lack of insurance and care was due to his failure to renew his OHP insurance and an

intentional choice to not seek care. While an inability to afford treatment may be a valid reason

for not seeking care, such that a failure to seek treatment may not be the basis for an ALJ's

disregard for symptom testimony, that is not the case under the record and argument made by

Plaintiff. Plaintiff has stated that his lack of insurance and care was a result of his own choice,

and the record shows that he was able to get back on the Oregon Health Plan after he reapplied.

AR 87. The ALJ also highlighted Plaintiff's reliance on self-medication during this time, and

noted the lack of medically prescribed or monitored pain management as further evidence that

this gap undermines the severity of Plaintiff' subjective symptom testimony. Plaintiff's failure to

seek treatment, therefore, is a specific, clear, and convincing reason for the ALJ to discount

Plaintiff's subjective symptom testimony.

### 3. Activities of Daily Living

Plaintiff argues that the ALJ erred in relying on Plaintiff's daily living activities as a

reason for discounting his subjective symptom testimony and finding that he could engage in

substantial gainful activity. Plaintiff's daily activities, he argues, are minimal housework and

childcare tasks that permit him to rest and shower throughout the day, and do not support his

ability to work a regular job. The ALJ stated that "the reported activities of daily living do not

support the severity and persistence alleged at the hearing. . . . This fairly normal array of

activities of daily living suggests that despite the claimant's pain, he could be expected to work

an eight-hour day at a sedentary exertional level, within the limitations described in the residual

functional capacity." AR 50.

Daily living activities may provide a basis for discounting subjective symptoms if the

plaintiff's activities either contradict his or her testimony or meet the threshold for transferable

work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495

F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the

activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's

activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A

claimant, however, need not be utterly incapacitated to receive disability benefits, and

completion of certain routine activities is insufficient to discount subjective symptom testimony.

*See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be

eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th

Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan

v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere

fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car,

or limited walking for exercise, does not in any way detract from her credibility as to her overall

disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair

v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th

Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations

to be relevant to his or her credibility and noting that "disability claimants should not be

penalized for attempting to lead normal lives in the face of their limitations"). Moreover,

particularly with certain conditions, cycles of improvement may be a common occurrence, and it

is error for an ALJ to pick out a few isolated instances of improvement over a period of months

or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Plaintiff's daily living activities do not contradict his subjective symptom testimony or support his ability to work an eight-hour workday in an out-of-home setting, even at sedentary exertion. Plaintiff shared in his hearing testimony that while he was able to clean dishes and help the children with homework, sweeping and vacuuming hurt his back. The ALJ failed to explain how Plaintiff helping his children get ready for school, changing diapers, preparing simple meals, watching television with his children, or helping them with homework contradicts his testimony about his pain, need for rest, and limited functioning. Plaintiff has not claimed complete incapacity, and he need not show as much for his symptom testimony to be credited. Plaintiff's daily living activities are not a clear and convincing reason to discount his subjective symptom testimony.

### 4. Improvement with Treatment

The ALJ also discounted Plaintiff's testimony because the ALJ found that Plaintiff improved with treatment. Plaintiff argues that this reason is improper in light of the record showing his condition consistently worsening over time. The ALJ acknowledged that Plaintiff's condition had somewhat worsened in 2017 and 2018, but found that medical records showed "improvement with an adjustment in treatment modalities." AR 50. As described in the ALJ's opinion, in a 2017 exam Plaintiff's gait, back strength, and heel to toe walk were normal, but Plaintiff's straight leg raise was positive bilaterally and he had decreased range of motion in lumbar spine extension and flexion. AR 50. In December 2017, Plaintiff received a lumbar spine MRI showing mild progression from a previous exam including "bilateral foraminal narrowing at LS-SI in position to affect the bilateral L5 nerve roots greater on the left than the right. . . . and edema within the right sacroiliac joint[.]" *Id.* Further review of the lumbar spine MRI taken

in 2017 showed no spinal cord or nerve root impingement that could be ameliorated by further surgery. Instead, Plaintiff's providers suggested a spinal cord stimulator trial. Plaintiff experienced some relief as a result and was pursuing a permanent spinal cord stimulator at the time of the hearing. The ALJ found that Plaintiff's treatment history confirmed his complaints of lower back and leg pain. AR 51.

The ALJ's consideration and summary of Plaintiff's medical records, and his interpretation thereof, was reasonable. Although Plaintiff and the ALJ may have different interpretations of Plaintiff's medical records, such disagreement does not invalidate the ALJ's conclusions if the ALJ's interpretation is reasonably supported by the record. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ has offered sufficiently specific evidence and properly assessed Plaintiff's medical history and improvement with the spinal cord stimulator treatment in conjunction with Plaintiff's prolonged failure to seek treatment or pain management.

### 5. Conclusion

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ's reliance on Plaintiff's failure to seek treatment or pain management and Plaintiff's improvement with treatment are clear and convincing reasons based on substantial evidence. Accordingly, the ALJ did not err in his analysis of Plaintiff's subjective symptom testimony.

### B. Medical Opinion Evidence

Plaintiff relies upon the opinion of two medical providers, Dr. Peter Kosek, M.D., and Ms. Rebecca McBride, NP. The ALJ gave little weight to both opinions, with less weight given

to Ms. McBride's opinion. Instead, the ALJ relied on the opinion of two state reviewing physicians when determining Plaintiff's RFC.

### 1. Legal Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit and the Commissioner[3] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining or reviewing physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan*, 246 F.3d at 1202; see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R.

---

[3] Because Plaintiff filed his application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

§§ 404.1527(c)(1), 416.927(c)(1). As is the case with the opinion of a treating physician, the ALJ

must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an

examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an

examining physician is contradicted by another physician's opinion, the ALJ must provide

"specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating

physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific,

legitimate reasons for doing so, and those reasons are supported by substantial record evidence."

*Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d

at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while

doing nothing more than ignoring it, asserting without explanation that another medical opinion

is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286

(noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In

other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

### 2. State Consultant Opinions

The ALJ relied upon two state consultant opinions—Dr. Thomas W. Davenport, M.D. issued an initial level opinion on February 3, 2016, and Dr. Susan E. Moner, M.D., issued a reconsideration level opinion on July 21, 2016. Both opinions conclude that Plaintiff is able to sit for six hours a day and stand for two, lift no more than ten pounds, and can occasionally climb stairs or a ramp, stoop, kneel, crouch, or crawl. In assessing Plaintiff's RFC, the ALJ relied upon these function-by-function determinations to determine that Plaintiff is capable of carrying out sedentary substantial gainful activity (SGA).

### 3. Opinion of Dr. Peter Kosek, M.D.

Dr. Kosek issued an opinion on March 21, 2018, consisting of eight fill-in-the-blank or check box answers. In response to the question "Does your patient have to lie down to rest periodically during the day? If yes, for how long and for what reasons?" Dr. Kosek answered yes "for pain, irregularly." AR 722. In response to the question "How often would [Plaintiff's] medical problems prevent him from being able to maintain a regular work schedule? (A normal work schedule would consist of an 8-hour day, 5 days per week with normal breaks that would usually consist of a morning and an afternoon break of approximately 10-15 minutes in duration

and a lunch break of one-half hour to one hour)" Dr. Kosek checked the option for "more than four days per month". AR 723. These two findings are the extent of Dr. Kosek's opinion.

Dr. Kosek's statement contradicts the ALJ's finding that Plaintiff is not disabled because "irregular" breaks or the need to miss more than four workdays per month would preclude Plaintiff from SGA. During the hearing, the ALJ asked the vocational expert whether missing more than four days of work per month would preclude SGA. The vocational experts described this as "excessive absenteeism" and said that it would preclude full-time competitive employment. AR 99. The ALJ also asked the vocational expert about unscheduled breaks. The vocational expert opined that the none of the jobs described as meeting Plaintiff's RFC would permit unscheduled breaks. AR 100-101.

The ALJ gave little weight to Dr. Kosek's opinion because it was overly vague, did not define the term "irregularly" as used with respect to Plaintiff's need for rest breaks, did not contain a function-by-function assessment, failed to acknowledge the pain relief Plaintiff experienced with the spinal cord stimulator, and was inconsistent with the treatment record. AR 52. The ALJ also noted that Dr. Kosek had only been treating Plaintiff since April 2018. Each of these rationales is examined in turn.

Dr. Kosek's opinion about Plaintiff's need to take breaks "irregularly" is vague as to the frequency and duration of the breaks. Dr. Kosek's opinion about Plaintiff's need for irregular breaks does not give the ALJ sufficient information about said breaks upon which to rely. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (holding that medical source opinion that described abilities as "limited" and "fair" were not useful in determining a claimant's RFC). The vagueness of this opinion and lack of definition of the term "irregularly" are specific and legitimate reasons for assigning the opinion less than controlling weight.

Plaintiff does not discuss or object to the ALJ's finding that Dr. Kosek's opinion lacks a function-by-function assessment. The ALJ is correct that there is no function-by-function assessment, or any discussion of Plaintiff's functional limitations. Dr. Kosek's opinion does not provide specific information to the ALJ about Dr. Kosek's view of Plaintiff's abilities, such as his lifting, sitting, stooping, climbing, banding, and standing capabilities. An ALJ may discount an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (holding that an ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" and does not include "any named limitations such as the inability to lift, stoop, walk, stand or sit"); *Gerde v. Berryhill*, 2018 WL 2193194, at *3 (W.D. Wash. May 14, 2018) ("The lack of specificity as to functional limitations is a legitimate reason to discount a medical opinion."). Thus, this is a specific and legitimate reason to discount Dr. Kosek's challenged opinions.

The ALJ states "Dr. Kosek . . . fails to acknowledge the pain relief the claimant's reported experiencing with his trial of spinal cord stimulator." AR 52. Plaintiff argues that the ALJ Dr. Kosek was aware of Plaintiff's surgical and pain history and that the extent to which the spinal stimulator would improve Plaintiff's symptoms was unknown and did not undermine his years of pain. The issue, however, is that Dr. Kosek ignored the current treatment that Plaintiff was undergoing and that Plaintiff reported improvement from that treatment. Plaintiff construes how Dr. Kosek might have interpreted the medical records, but Dr. Kosek did not so state in his medical opinion. Dr. Kosek's failure to acknowledge Plaintiff's new treatment that was

producing positive results is a specific and legitimate reason for the ALJ to discount Dr. Kosek's opinion.

Plaintiff objects to the ALJ's finding that Dr. Kosek's opinion is contradicted by the medical evidence. The ALJ explained that this inconsistency is demonstrated by the following facts: Plaintiff was not on opioid pain medications, his most recent MRI showed no nerve root or cord involvement, surgery is not indicated, and Plaintiff is not regularly in the care of neurology or pain management but is instead seen on an as-needed basis. *Id.*

Plaintiff responds that he has good reasons for not taking opioids and for not being a candidate for back surgery, such that these facts are not inconsistent with Dr. Kosek's opinion. Plaintiff argues that his lack of opioid pain medication is a result of insurance limitations. Whether opioid pain medication is an appropriate response to a patient's symptoms and covered by insurance is not facially consistent or inconsistent with the limitations described in Dr. Kosek's opinion, and the Commissioner has not provided any basis for finding as much. The Commissioner points to no requirement in social security regulations or case law requiring that a plaintiff be prescribed and taking opioids to treat back and leg pain for a finding that that person is unable to maintain SGA at a sedentary level. The Commissioner has not provided any argument or legal authority showing why this fact is inconsistent with Dr. Kosek's opinion.

Plaintiff further argues that his ineligibility for surgery does not contradict Dr. Kosek's opinion. Plaintiff has undergone two failed back surgeries. His ineligibility for a third does not contradict his condition or Dr. Kosek's opinion that he may need to miss more than four work days per month. It is entirely possible that a plaintiff whose medical conditions are not readily ameliorated by surgery could need to miss four or more days of work per month as a result of their disabling pain. This is especially true after the medical records have documented two failed

surgeries. The ALJ's reliance on Plaintiff's ineligibility for surgery is not a legitimate basis for finding that Dr. Kosek's opinion is inconsistent with the medical record.

Plaintiff highlights that, even though there is no nerve root or cord involvement in his spinal injuries as shown in the MRI, the issues that are present worsened between 2015 and 2018. The Commissioner has not explained why nerve root or cord involvement is necessary to support Dr. Kosek's opinion, when MRI imaging shows other objective and progressing injuries to the back.

Plaintiff also argues that Dr. Kosek himself is a neurologist and that Plaintiff is therefore followed by a neurologist. Plaintiff is correct that Dr. Kosek is a neurologist, but the ALJ's statement was specific to whether plaintiff was receiving ongoing rather than as-needed treatment by a neurologist. Given Plaintiff's history of care and pursuit of a permanent spinal cord stimulator under the care of Dr. Kosek, it is not clear to what the ALJ was referring when he asserted that Plaintiff was seen on an as-needed basis or how that might affect the analysis. Other than his 14-month gap in treatment, Plaintiff has received care with regularity since his alleged date of onset.

The ALJ further explained that Plaintiff did not begin seeing Dr. Kosek until April, 2018, and was only seen twice by Dr. Kosek before he issued the opinion. AR 52. The length of the treating relationship and frequency of examination are factors that must be considered in evaluating the medical opinion of a treating physician. *See* 20 C.F.R. § 416.927(c)(2)(ii); *see also Holohan v. Masanari*, 246 F.3d 1195, 1202, n.2 (9th Cir. 2001) (noting that the ALJ may discount the opinion of a treating physician who has not seen the patient long enough to develop a "longitudinal picture").

Plaintiff argues that because Dr. Kosek had reviewed Plaintiff's prior medical history, the short duration of the treating relationship is negated. Under Plaintiff's argument, however, the well-established rule that the length of treatment relationship and frequency of examination must be considered would be superfluous. All physicians are likely to review a patient's medical history in the course of providing treatment, just as all reviewing physicians do. Such a review does not extend the length of the treating relationship or number of examinations. The ALJ properly noted the brevity of Dr. Kosek's treating relationship with Plaintiff. Plaintiff argues that Ms. McBride has a longer treating relationship with Plaintiff, and she concurred with Dr. Kosek's opinion. Just as a treating relationship cannot be extended by review of records, agreement by a separate source does not import that source's relationship with the Plaintiff into the treating physician's relationship.

The ALJ, however, did not explain in his opinion how the relative brevity of Plaintiff's relationship with Dr. Kosek allows for greater weight to the state's reviewing physician reports. The reviewing, non-treating physicians issued their opinions in 2016 after never having examined Plaintiff in-person. While Dr. Kosek may be relying on a relatively short treatment relationship, his opinion benefits from two additional years of medical records, imaging that was more current, and from multiple in-person examinations and interactions. Thus, this reason is not a specific and legitimate reason to discount Dr. Kosek's opinion in favor of the agency reviewing physicians.

Although some of the ALJ's reasons for discounting Dr. Kosek's opinion were not specific and legitimate, the ALJ provided two specific and legitimate reasons for discounting Dr. Kosek's opinion that Plaintiff would miss four days per month of work and three reasons for

discounting Dr. Kosek's opinion that Plaintiff would need irregular breaks. The ALJ, therefore, did not err in evaluating Dr. Kosek's opinion.

### 4.  Opinion of Ms. Rebecca McBride, N.P.

Effective March 27, 2017, the Social Security Administration amended its regulations and SSRs relating to the evaluation of medical evidence, including the consideration of "acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[4] Most of these changes were effective only for claims filed after March 27, 2017. The Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f) and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March 27, 2017, the revised version of 20 C.F.R. § 416.927 governs Plaintiff's claim.

This revised regulation incorporates the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources, and generally giving less deference to "other" medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions, explain the weight given to such opinions, provide sufficient analysis to allow a subsequent reviewer to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the

---

[4] Among other things, the Commissioner rescinded SSR 06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5845; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Because Ms. McBride is a nurse practitioner, she is considered an "other" medical source.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Ms. McBride concurred with Dr. Kosek's opinion in a separate statement, without adding any of her own analysis. The ALJ gave little weight to Ms. McBride's opinion both because she is a nurse practitioner and for the same reasons he assigned little weight to Dr. Kosek's. AR 52 ("Because the opinion from Dr. Kosek and Ms. McBride is poorly supported and inconsistent with the treatment records, the undersigned gives both statements little weight, with even less weight given to the opinion of the nurse practitioner."). Plaintiff points out that Ms. McBride has a longer treating relationship with Plaintiff than Dr. Kosek. The ALJ makes no additional findings about the nature and duration of Plaintiff's treating relationship with her. As explained

above, the ALJ did not err in discounting Dr. Kosek's opinion. Accordingly, the ALJ provided a germane reason for discounting Ms. McBride's concurrence in Dr. Kosek's opinion.

## C. Lay Witness Testimony

Lay witness testimony is evaluated under the same standard as "other" medical evidence testimony in that the ALJ cannot ignore it, need not discuss it witness-by-witness, and need only provide a germane reason to discount it. *Molina*, 674 F.3d at 1114; *Stout*, 454 F.3d at 1053. An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff's wife testified to his symptoms and resulting limitations. The ALJ gave little weight to Plaintiff's wife's opinion testimony because the "severity and persistence of symptoms and limitations" she described was "not consistent with the record as a whole, specifically, the gap in treatment over 2016 and 2017, as well as the testimony regarding some pain relief with the spinal cord stimulator." AR 52. The ALJ further noted that Plaintiff's wife does not have medical training necessary to helpfully convey observations regarding his symptoms and is not a

disinterested third party as a result of her marriage to plaintiff. *Id.* The Commissioner explicitly acknowledges that "the ALJ's reasoning that the lay witness was not 'medically trained' or that she could not be considered a disinterested third party witness were not proper reasons to reject the statement. Tr. 54. However, because the ALJ provided other valid reasons to reject the statement, any error was harmless." ECF 12 at p. 10, n.4 (Quoting AR 52)

Excluding the reasons that the Commissioner concedes were erroneous, the ALJ provided germane reasons to discount the testimony of Plaintiff's wife. As discussed above, Plaintiff's 14-month gap in treatment and his improvement with the spinal cord treatment supported the ALJ's analysis regarding Plaintiff's subjective testimony and are germane reasons with respect to the testimony of Plaintiff's wife.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge